UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LARRY PHILLIPS, | ) | 1:04-cv-6398-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| v. | ) | |
| | ) | ORDER DIRECTING THE ENTRY OF |
| JO ANNE B. BARNHART, | ) | JUDGMENT FOR DEFENDANT JO ANNE B. |
| Commissioner of Social | ) | BARNHART, COMMISSIONER OF SOCIAL |
| Security, | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | LARRY PHILLIPS |
| Defendant. | ) | |
| | ) | |

Plaintiff is proceeding with counsel and is seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying an application for Supplemental Security Income (SSI) benefits. By order dated February 6, 2005, Judge Robert E. Coyle reassigned this case to the undersigned Magistrate Judge because both parties had consented to the Magistrate's jurisdiction to conduct all proceedings, including ordering the entry of judgment, pursuant to 28 U.S.C. § 636(c). The matter is currently before the Court on the parties' briefs, which have been submitted to the Court on the administrative record and without oral argument.

1

# HISTORY

On July 12, 2002, Plaintiff applied for Supplemental Security Income (SSI) with a protective filing date of June 25, 2002, alleging disability since May 25, 2002, due to hepatitis C and hypertension. (Tr. 81-85, 87, 96.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, and appeared at, a hearing before the Honorable James M. Mitchell, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on November 17, 2003. Plaintiff appeared with an attorney and testified before the ALJ; a vocational expert (VE) also testified. (Tr. 60-61, 14, 23-59.) On May 28, 2004, the ALJ denied Plaintiff's application for benefits. (Id. at 14-19.) Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on August 12, 2004, Plaintiff filed the complaint in this action on October 13, 2004. (Id. at 5-7.) After delays due to Plaintiff's failure to file a timely opening brief, briefing commenced on November 29, 2005, and was completed on January 12, 2006.

# SCOPE AND STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

2

(9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. <u>See</u>, <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

///

## ANALYSIS

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations[1] provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a

---

[1] All citations to the Code of Federal Regulations is to the 2004 version unless otherwise stated.

4

magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.

Here, the ALJ concluded that Plaintiff's impairments of hepatitis C and hypertension were severe but did not meet or equal a listing; further, Plaintiff retained the residual functional capacity (RFC) to perform light work activity with nonexertional limitations that did not permit him to perform the full range of light work, could not perform his past relevant work, but as a younger individual between the ages of forty-five and forty-nine with a limited education, there were a significant number of jobs in the national economy that he could perform.

I. The ALJ's Findings regarding Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ failed to state clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony regarding subjective complaints.

The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively

measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 416.929(c).

  Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

  1. The individual's daily activities;
  2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

6

```
    3. Factors that precipitate and aggravate the symptoms;
    4. The type, dosage, effectiveness, and adverse
       side effects of any medication for pain or other
       symptoms;
    5. Treatment, other than medication, for relief of
       pain or other symptoms;
    6. Any measures other than treatment used by the
       individual to relieve the pain or other symptoms; and
    7. Any other factors concerning the individual's
       functional limitations and restrictions due to
       pain or other symptoms.
```

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ here noted Plaintiff's complaints[2] of constant pain at the level of eight on a scale of one to ten, and that everything hurt. He found that Plaintiff's testimony was partially credible, but not to the extent alleging disability. (Tr. 17.)

The ALJ stated that Plaintiff's testimony was exaggerated, vague, and inconsistent; Plaintiff's testimony was consistent with an ability to perform light work. (Tr. 17.) The ALJ relied on inconsistencies in Plaintiff's testimony, noting that although he claimed constant pain at a level of eight, the medical record reflected non-acute pain at a level of six to seven most of the time. (Tr. 17.) Substantial evidence supports this finding because treatment notes show that although Plaintiff sometimes reported his pain as acute or at a level of 8 (Tr. 173, 178, 182), Plaintiff's pain was reported as not acute, but chronic, and at a level of six or seven many times throughout 2002 and early 2003 (Tr. 161, 156, 166, 169, 170, 186, 189, 197.) Although this may warrant an inference that Plaintiff reported his pain

---

[2] Plaintiff testified that he hurt all over, with a throbbing pain that was more often in his back, and came and went in his leg (Tr. 45-47). His pain was about an eight every day, and it stayed that way despite the pills (Tr. 52). He testified that his medications helped his pain (Tr. 48).

7

truthfully on each such occasion, it also supports the ALJ's conclusion that Plaintiff's testimony about constant pain at a level of eight was inconsistent with his reports of pain.

The ALJ properly considered the fact that Plaintiff testified inconsistently regarding whether or not his pain medication helped his pain and regarding the level of pain that he suffered every day.

It is established that included in the factors that an ALJ may consider in weighing a claimant's credibility are the claimant's reputation for truthfulness; inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

Here, the ALJ properly relied on inconsistent reports of pain symptoms. Further, the ALJ noted that although Plaintiff reported pain at a level of nine in June 2002 when requesting a letter from his physician saying that he was unable to work (Tr. 181), Plaintiff also testified that he prepared meals three to four times per week, washed dishes daily, dusted three or four times weekly, mopped the floor twice weekly, vacuumed twice weekly, did laundry three times a week, shopped weekly, and changed bedding weekly (Tr. 17, 35-36). A claimant's ability to engage in activities of daily living to the extent that he or she

8

1  spends a substantial part of his day engaged in pursuits
2  involving the performance of physical functions that are
3  transferable to the work setting is relevant; a specific finding
4  as to this fact may be sufficient to discredit a claimant's
5  allegations. Morgan v. Commissioner of Social Sec. Admin., 169
6  F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947,
7  959 (9th Cir. 2002). The ALJ here properly relied on Plaintiff's
8  activities of daily living, which were sufficient to be
9  transferable to a work setting, and which were inconsistent with
10 his claims of disabling, constant pain.
11     In summary, the Court concludes that the ALJ cited clear and
12 convincing reasons for rejecting Plaintiff's subjective
13 complaints of pain and limitation to the extent alleged, and that
14 the ALJ's reasons were supported by substantial evidence in the
15 record and were sufficiently specific to allow this Court to
16 conclude that the ALJ rejected the claimant's testimony on
17 permissible grounds and did not arbitrarily discredit Plaintiff's
18 testimony.
19     II. Expert Opinions
20     Plaintiff argues that the ALJ failed to offer specific and
21 legitimate reasons for rejecting the opinion of treating
22 physician Dr. Felizarta and crediting the opinion of treating
23 physician Dr. Nyitray, a cardiologist.
24     Treating physician Dr. William Nyitray opined that in
25 October 2001, Plaintiff's hypertension was generally controlled,
26 Plaintiff felt well, there were no specific complaints, and
27 follow-up was recommended as needed or in one year. (Tr. 134.) In
28 November 2002, Dr. Nyitray opined that Plaintiff's hypertension

9

generally was well controlled with blood pressure medications and was at 130/90; Plaintiff had done fairly well and had no specific complaints, his cardiac chambers were normal, and no changes would be made in his treatment; Plaintiff could return in twelve months or as needed. (Tr. 133.)

Dr. Tomas Rios performed a comprehensive internal medicine consultative examination of Plaintiff in October 2002. Plaintiff reported that he had stopped taking Interferon because of long treatment in September 2002; he complained of diffuse muscle aches and pain in the abdominal region, easy fatigability but no headaches, and no gastrointestinal bleeding. The doctor found on examination no abdominal abnormalities, no ascites, no palpable splenomegaly, no tremulousness or asterixis, no edema to the lower extremities, and motor strength in the upper and lower extremities at 5/5 with normal bulk, tone, and grip strength. Dr. Rios concluded that Plaintiff had hepatitis C without liver function compromise, hepatic encephalopathy, or portal hypertension; and he had poorly controlled hypertension without diastolic dysfunction or other end organ damage. Dr. Rios expressly concluded that Plaintiff's claim of labor-restricting complications from hepatitis C was not corroborated on examination, and there were no stigmata of significant liver compromise. (Tr. 120-23.)

State agency physician Arthur Jing opined in November 2002 that Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently, sit, stand and walk about six hours in an eight-hour day, but must avoid heights due to dizziness. (Tr. 124-31.) Another state agency physician affirmed Dr. Jing's

findings on January 31, 2003. (Tr. 124.)

In January 2003, Dr. Agnes Wu opined that a biopsy of Plaintiff's liver revealed a varied degree of fibrosis, no definite cirrhosis, and resulted in a diagnosis of chronic hepatitis C with mild to moderate inflammatory activity (grade 2-3) and portal to focally septal fibrosis (stage 1-3). (Tr. 260.)

Plaintiff testified that Dr. Franco Felizarta was his primary treating doctor for two years and was the doctor to whom he went most often; he had seen him ten or twelve times in the last twelve months, or was seeing him monthly until a couple of months before the hearing. He told Plaintiff to take his medicine and keep his appointments; there were no specific physical restrictions, but the doctor had excused Plaintiff from the job search. (Tr. 40-42, 53.)

In determining Plaintiff's RFC, the ALJ recited the opinions summarized immediately above. The ALJ gave greater weight to the reports of Plaintiff's other treating physician and the reports of the consultative and state agency examiners over those of Dr. Felizarta. He stated:

> Greater weight is given to the reports of the claimant's treating physician, and the reports of the consultative and State Agency examiners over that of Dr. Fleizarta (sic), based upon the length, nature and extent of the treating relationship; supportability with medical signs/laboratory findings; consistency with the record; and area of specialization. The one page form completed by Dr. Fleizarta is unsupported by other documentation, and his claim of "Stage 4 cirrhosis" is in conflict with laboratory findings, and the report of treating physician Dr. Nyitra, who indicated that the claimant was doing faily well. As noted above, tests indicate no hepatic encephalopathy or sigificant liver function compromise.
> Accordingly, the undersigned finds that the claimant retains the residual functional capacity for light work activity.

(Tr. 16.)

An ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). However, if the medical opinion of a claimant's treating physician is uncontroverted, then an ALJ must present clear and convincing specific reasons, supported by substantial evidence in the record, for rejecting the uncontroverted medical opinion of a claimant's treating physician. Holohan v. Massanari, 246 F.3d 1195, 1203 (9th Cir. 2001). A failure to set forth a reasoned rationale for disregarding a particular treating physician's findings is legal error. Cotton v. Bowen, 799 F.2d at 1408.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining

physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d at 1041.

In weighing opinions, more weight is generally given to treating sources and examining sources than to nonexamining sources; among treating sources, the nature and extent of the treatment relationship and the frequency of examination are considered in weighing opinions. 20 C.F.R. § 416.927(d)(1), (2). Greater weight will be given to opinions based on or supported by relevant evidence, such as medical signs and laboratory findings. 20 C.F.R. § 416.927(d)(3). Likewise, the better an explanation a source provides for an opinion, the more weight will be given to the opinion. Id. The more consistent an opinion is with the record as a whole, the more weight will be given to the opinion. 20 C.F.R. § 416.927(d)(4). More weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 416.927(d)(5); see Holohan v. Massanari, 246 F.3d 1195, 1203 n. 2 (9th Cir. 2001). A conclusional opinion that is unsubstantiated by relevant medical documentation may be rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995). It is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d

1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The fact that an opinion is based primarily on the patient's subjective complaints may be properly considered. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). It would be permissible for an ALJ to prefer an opinion supported by specific clinical findings and an explanation thereof over a check-off type of form lacking an explanation of the basis for the conclusions. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (citing Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983)); see Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004). Reliance on the opinion of a consulting, examining physician is appropriate, and the opinion of such an expert is substantial evidence where it is based on the expert's own examination and clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ's reasons were specific and legitimate. Further, they were supported by substantial evidence. Dr. Felizarta's opinion was on a single-page form, with less than thirty words being contributed by Dr. Felizarta, and without any explanation of how Plaintiff's impairments translated into functional limitations. (Tr. 216.) Dr. Nyitray had seen Plaintiff for well over a year based on the fact that the first of two visits documented was in itself a follow-up visit. (Tr. 134.) Thus, even though there are records of visits extending over a year with Dr. Felizarta, Dr. Nyitray's treatment relationship was also extensive. Dr. Felizarta's treatment notes are largely illegible; the bulk of legible medical history from him is

14

laboratory data. (Tr. 156-214, 218-309.) Dr. Felizarta's opinion of disability was expressly based on objective findings of stage 4 fibrosis or cirrhosis[3] by liver biopsy. (Tr. 216.) However, the biopsy revealed only fibrosis at stage 1-3. (Tr. 260.) There was no specific stage of cirrhosis stated by Dr. Felizarta, but Dr. Wuu opined that the liver biopsy revealed no definite cirrhosis. Likewise, substantial evidence supports the ALJ's conclusion that Dr. Felizarta's opinion was inconsistent with the general medical evidence, which included Dr. Nyitra's opinion that Plaintiff was doing fairly well, and the record from Dr. Rios as well to the effect that Plaintiff revealed no signs of significant liver function compromise or hepatic encephalopathy. Substantial evidence supports the conclusion that Dr. Felizarta's opinion was not supported by the objective medical evidence. Finally, the record reveals that Dr. Rios was an internist, and Dr. Nyitray a cardiologist. (Tr. 133, 120, 123.)

 Plaintiff argues that the case must be remanded for medical expert testimony regarding the blood or laboratory tests, which Plaintiff asserts, without citation to the record, reveal elevated enzymes; Plaintiff attaches as an exhibit to his brief material from a website of Lab Tests Online that purport to indicate that the enzymes in question are measured to detect liver disease. However, it is Plaintiff's burden to prove that he had an impairment of the requisite severity for the requisite duration. Further, Plaintiff has not established that there was a

---

[3] The handwriting is unclear, but it appears that Dr. Felizarta was referring to stage 4 fibrosis and not cirrhosis, as the ALJ described it. (Tr. 216.) However, the ALJ's basic point, namely, that the biopsy did not reflect the severity of liver condition that Dr. Felizarta claimed, remains sound.

15

duty to develop the record. The law imposes a duty on the ALJ to develop the record in some circumstances. 20 C.F.R. § 416.912(d)-(f) (recognizing a duty on the agency to develop a medical history, recontact medical sources, and arrange a consultative examination if the evidence received is inadequate for a determination of disability); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (recognizing the ALJ's duty fully and fairly to develop the record even if the claimant is represented by counsel). The duty arises when the record before the ALJ is ambiguous or inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001). There is no indication in the present case that the record is ambiguous or inadequate to allow for proper evaluation of the evidence.

## DISPOSITION

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on proper legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff Larry Phillips.

IT IS SO ORDERED.

**Dated:   January 31, 2007**             /s/ Sandra M. Snyder
icido3                                    UNITED STATES MAGISTRATE JUDGE